# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Goodyear Tire & Rubber Company, Inc., | ) | CASE NO: 5:16CV1959 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| Daimler Trucks North America, LLC, | ) | |
| | ) | (Resolving Docs. 22, 29, 31) |
| | ) | |
| Defendant. | ) | |

Pending before the Court is a motion to dismiss Defendant Daimler Trucks North America's ("DTNA") amended counterclaim. Doc. 31. The prior pending motion to dismiss DTNA's initial counterclaim (Doc. 22) is DENIED AS MOOT. Also pending before the Court is DTNA's motion requesting that this Court conduct a choice of law analysis and determine that Oregon law governs this matter. The Court now resolves these motions.

**I. Legal Standard for Motion to Dismiss**

The Sixth Circuit stated the standard for reviewing a motion to dismiss in *Assn. of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545 (6th Cir. 2007) as follows:

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563.

*Id.* at 548. Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotations omitted).

If an allegation is capable of more than one inference, this Court must construe it in the plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)). This Court may not grant a Rule 12(b)(6) motion merely because it may not believe the plaintiff's factual allegations. *Id.* Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions. *Id.* Specifically, the complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotations and emphasis omitted).

**II. Background Facts**

The underlying dispute in the matter revolves around allegations that the parties entered into an agreement through which Plaintiff Goodyear Tire & Rubber agreed to sell tires to DTNA. Goodyear alleges that DTNA agreed to a take or pay provision in the parties' most recent contract amendment and that DTNA failed to purchase the required numbers of tires under the contract.

In addition to denying the allegations in the complaint, DTNA filed an amended counterclaim asserting four causes of action. In its first claim, DTNA seeks rescission of the parties' contract due to economic duress. In its second claim, DTNA claims that promissory estoppel should be utilized to prevent enforcement of the take or pay provision. Count three of the counterclaim seeks declaratory relief that determines that the Uniform Commercial Code governs the parties' disputes. In its final claim, DTNA alleges a breach of the duty of good faith and fair dealing.

Goodyear has moved to dismiss all four counts in the counterclaim. DTNA has opposed the motion, and Goodyear has replied. The Court now addresses the arguments related to each count.

**III. Analysis**

    A. Economic Duress

In order to state claim for economic duress, DTNA must show: 1) that it involuntarily accepted Goodyear's terms, 2) that circumstances provided DTNA no other reasonable alternative, and 3) that the circumstances were the result of Goodyear's coercive acts. *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246 (1990).[1] "To avoid a contract

---

[1] As is detailed below, the Court applies Ohio law in this matter in its analysis because there is no conflict between Ohio and Oregon law on the arguments addressed by this Court.

3

on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." *Id.*

In its counterclaim, DTNA claims that "with the wrongful intent of developing a negotiating advantage in order to force DTNA to accept unreasonable contract terms, Goodyear stalled negotiations regarding '2015 and beyond' tire price and volume until just days before the parties' existing Supply Contract was set to expire." In this regard,

> Ohio has held that a person who alleges to have been subjected to economic duress must demonstrate "that he or she was subjected to 'a wrongful or unlawful act or threat'" and that it "'deprive[d] the victim of his unfettered will.'" *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246, 551 N.E.2d 1249 (1990) (quoting 13 Williston on Contracts (3 Ed.1970) 704, Section 1617); *see also Local 17 Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers Pension Fund v. Mooney Welding*, 993 F.Supp. 615, 619 (N.D.Ohio 1997). "'Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion.'" *Blodgett*, 49 Ohio St.3d at 246, 551 N.E.2d 1249 (quoting 13 Williston on Contracts 708, § 1617 (3d ed.1970)). Furthermore, Ohio has held that "[i]t is never duress to threaten to do that which a party has a legal right to do" and that "the fact that a threat was made of a resort to legal proceedings to collect a claim which was at least valid in part constitutes neither duress nor fraud such as will avoid liability on a compromise agreement." *Gallagher v. Lederer*, 86 Ohio App. 181, 183, 90 N.E.2d 412 (Ohio Ct.App. 1st Dist.1949) (quoting 25 Am.Jur.2d *Duress and Undue Influence* § 21).

*Charity v. GMAC Mortg. Investments*, No. 4:09-CV-02958-SL, 2010 WL 3648949, at *10 (N.D. Ohio Sept. 14, 2010).

This Court finds that the parties' contracts created no legal obligation for Goodyear to negotiate new terms under any time constraints. As such, Goodyear was within its legal rights to propose pricing terms in whatever time frame it chose. Accordingly, DTNA's allegation that Goodyear "stalled negotiations" cannot serve as a

basis for a claim of duress. In an effort to avoid this conclusion, DTNA asserts that there are occasions on which a party can have the legal right to act but does so for an illegitimate purpose. DTNA claims that under such circumstances that a claim for economic duress is viable. In support, DTNA relies upon *Comcast of Oregon II, Inc. v. City of Eugene*, 211 Or.App. 573 (2007). However, the *Comcast* Court noted that "[i]nducing a party to pay an invalid fee is an illegitimate end[.]" *Id.* at 586. Herein, DTNA has not pled any *illegitimate* end. Instead, DTNA alleges that Goodyear engaged in its tactics to create an advantage in negotiations. Accepting this allegation as true, the Court declines to find such a tactic to approach illegitimate. Instead, the record appears to demonstrate that Goodyear took advantage of a poor business decision by DTNA, i.e., DTNA continued to promise Goodyear tires to its customers without an ongoing contract in place with firm pricing. Goodyear's actions did not place DTNA in this predicament, and Goodyear's actions in negotiating do not support any viable claim for economic duress. The motion to dismiss is GRANTED as it relates to count one of the counterclaim.

B. Promissory Estoppel

In its second count, DTNA alleges that promissory estoppel should prevent Goodyear from enforcing the take or pay provision of the parties' contract. Ohio courts have described promissory estoppel as follows:

> Promissory estoppel is a quasicontractual or equitable doctrine. The elements of promissory estoppel require a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. In order to prevail on a claim of promissory estoppel, Craigmyle must show a clear and unambiguous promise and reliance by the party to whom the promise is made. The reliance must be reasonable

5

and foreseeable, and the party relying on the promise must have been injured by the reliance. A promise is defined as a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.

*Dailey v. Craigmyle & Son Farms, L.L.C.*, 177 Ohio App. 3d 439, 446 (2008) (citations and quotations omitted).

In its counterclaim, DTNA alleges: "Goodyear's representations during the course of negotiations with DTNA that Goodyear's tire pricing would remain in line with other Tier 1 manufacturers was a current promise that was intended to, and did, induce DTNA to rely on it by continuing to enter commitments with customers whose specifications called for Goodyear tires." However, "[p]romissory estoppel does not apply to oral statements made prior to the written contract, where the contract covers the same subject matter." *Borowski v. State Chem. Mfg. Co.*, 97 Ohio App.3d 635, 643 (1994) (citing *Gallant v. Toledo Pub. Schools*, 84 Ohio App.3d 378, 386 (1992))[.]" *Worthington v. Speedway SuperAmerica LLC*, 2004 WL 2260501 (Ohio Ct. App. Sept. 20, 2004). There is no dispute that the parties' contract included the pricing terms of Goodyear's tire. Accordingly, a claim for promissory estoppel that contends different terms were promised by Goodyear cannot survive. As such, count two of the counterclaim is hereby DISMISSED.

C. <u>Declaratory Judgment</u>

Goodyear contends that count three of the counterclaim is duplicative of its claim for relief and should be dismissed. In its claim, DTNA seeks a declaration that the parties' contract is governed by the Uniform Commercial Code and that Goodyear's damages are limited by statute. Regardless of any overlap with the analysis the Court will perform on Goodyear's claims, the Court finds no prejudice in allowing the

6

declaratory judgment claim from DTNA to move forward. As such, the third count of the counterclaim survives the motion to dismiss.

D. Duty of Good Faith and Fair Dealing

In the final count of its counterclaim, DTNA alleges that Goodyear breached its duty of good faith and fair dealing. Specifically, DTNA alleges:

> 48. Amendment No. 1 has specific provisions regarding when and how price increases were to occur. During late 2012 through the summer of 2013, Goodyear tried to force price increases on the tires, which were not in compliance with the provisions of Amendment No. 1. In fact, Goodyear went so far as to create allegedly new products, G399A and G572A, that replaced G399 and G572, which were two of the highest volume tires that DTNA purchased from Goodyear. The price increases were against the terms of Amendment No. 1, were not justified, and there were no technological improvements in the G399A and the G572A that warranted the price increase.
>
> 49. At the time Goodyear forced this price increase on the "A" line product, it knew that DTNA had significant customer commitments with Goodyear tires. DTNA, subject to objection and reserving all of its rights, agreed to the price increase on the "A" line product, as it had no other choice because of customer commitments. Goodyear's conduct, including, without limitation, its negotiation tactics, improper threat of termination of Amendment No. 1, improper accusation that DTNA was in breach of the contract, and forcing the price increase on questionable new tire products, was not in good faith.

DTNA goes on its final counterclaim to again allege that Goodyear's late disclosure of its pricing terms during November 2014 also constituted a breach of the duty of good faith and fair dealing.

Goodyear claims that DTNA's claim is barred by the voluntary payment doctrine. "In the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." *State ex rel. Dickman v. Defenbacher*, 151 Ohio St. 391, 395 (1949). Unlike the Court's

7

review of the stand-alone economic duress claim, there is no assertion that Goodyear had the legal right to increase the price of the tires during 2013. Moreover, while Goodyear contends that DTNA has insufficiently pled an exception to the voluntary payment rule, the Court finds that any such argument is outside the pleadings in this matter. First, the extent and voluntariness of payments by DTNA is not information in the counterclaim or other pleadings in this matter. Second, to the extent that Goodyear contends that the alleged duress is insufficiently pled, Goodyear again asks the Court to look outside the pleadings and examine other alternatives through which DTNA could have purchased tires. The Court declines to do so at this stage of the proceedings.

However, for the same reasons the Court dismissed the stand-alone duress claim, DTNA's allegations regarding Goodyear's conduct in 2014 cannot serve as the basis for a claim of breach of the duty of fair dealing. Goodyear was within its rights to propose pricing in any amount at any time to DTNA. As such, the timing of its pricing proposal and the prices contained therein cannot be utilized to support a claim of breach of the duty of fair dealing. Accordingly, count four survives with respect to the 2013 allegations but fails with respect to the 2014 allegations.

E. Choice of Law

Having found no dispute between Oregon and Ohio law with respect to the specific arguments addressed above, the Court denies DTNA's motion regarding choice of law as MOOT. Doc. 29.

**IV. Conclusion**

Goodyear's motion to dismiss DTNA's counterclaims (Doc. 31) is GRANTED IN PART AND DENIED IN PART as detailed above. Goodyear's motion to dismiss the

8

initial counterclaim (Doc. 22) is DENIED AS MOOT.  DTNA's motion to apply Oregon law is DENIED AS MOOT.

IT IS SO ORDERED.

<u>September 14, 2017</u>            <u>     /s/ Judge John R. Adams         </u>
Date                                  JUDGE JOHN R. ADAMS
                                        UNITED STATES DISTRICT COURT