UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| Goodyear Tire & Rubber Company, Inc., | ) | CASE NO. 5:16CV1959 |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Daimler Trucks North America LLC. | ) | (Resolves Docs. 71, 76, 86) |
| Defendant. | ) | |

This matter comes before the Court on a motion for summary judgment filed by Plaintiff Goodyear Tire & Rubber Company, Inc. ("Goodyear"). Doc. 76. Also pending before the Court is a motion to strike certain evidence filed by Defendant Daimler Trucks North America LLC ("Daimler"). Doc. 86. Finally, Daimler has also moved for reconsideration of the Court's order dismissing portions of its counterclaim. Doc. 71. The Court now resolves the parties' pending motions.

**I. Facts & Procedure**

There is no dispute between the parties that they entered into a three-year contract (Amendment No. 2) in 2015 under which Goodyear would continue to supply commercial truck tires to Daimler. There is also no dispute that the plain language of the contract obligated Daimler to purchase a minimum of 42,500 tires from Goodyear every quarter. The contract further provided that "[f]or every Product DTNA fails to purchase below 42,500 in a Contract Quarter, DTNA will pay to Goodyear the then current price of the Product(s) multiplied by the Shortfall within thirty (30) days of the end of the Contract Quarter." It is further undisputed that in the

second quarter of 2016, Daimler failed to purchase 42,500 tires under the contract. Daimler also failed to purchase the minimum amount required in the third and fourth quarters of 2016 and the first two quarters of 2017.[1]

Goodyear has moved for summary judgment on its breach of contract claim as well as Daimler's remaining counterclaims. Daimler has opposed the motion, and Goodyear has replied. Daimler has also moved to strike four of the declarations relied upon by Goodyear claiming that the witnesses were not properly identified during discovery in this matter. The Court now resolves the parties' arguments.

**II. Legal Standard**

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 323. This is so that summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250.

---

[1] The parties' briefing in this matter concluded before the final two quarters of 2017.

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves ..." *Id.* Rule 56(c) states, "... [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." A scintilla of evidence in favor of the nonmoving party is not sufficient.

## III. Law and Analysis

### A. Breach of Contract – Take or Pay Provision

The Sixth Circuit has very recently opined on challenges to the validity of take-or-pay provisions.[2] Similar to the situation presented before the Sixth Circuit, this Court has found little guidance in either Ohio or Oregon law to address the specific arguments herein. As such, this Court takes guidance from the Sixth Circuit's opinion in *Hemlock Semiconductor Corp. v. Kyocera Corp.*, 2018 WL 3949110 (6th Cir. Aug. 16, 2018). In *Hemlock*, the Circuit explained:

> Under the approach followed in other jurisdictions, the key question is whether the take-or-pay provisions offer Kyocera two viable performance options, on the one hand, or one performance option coupled with a liquidated damages provision, on the other. *See, e.g., Superfos Invs. Ltd. v. FirstMiss Fertilizer, Inc.*, 821 F.Supp. 432, 434–35 (S.D. Miss. 1993) (collecting cases); *Minnick v. Clearwire U.S. LLC*, 174 Wash.2d 443, 275 P.3d 1127, 1130–31 (2012) (en banc); *Am. Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 329 (1998); 11-59 *Corbin on Contracts* § 59.10 (2017); 14 *Williston on Contracts* § 42:10 (4th ed.). If the former, the take-or-pay provisions are enforceable as written. If the latter, the question becomes whether the "pay" option

---

[2] Initially, the Court notes it granted leave to amend on January 8, 2018, after Goodyear's briefing in this matter. Doc. 91. As such, Goodyear's assertions regarding the failure to plead by Daimler no longer have merit.

quantifies lawful liquidated damages or an unlawful penalty. If the payment obligation is a penalty, it is unenforceable—regardless of what the parties' contract labels it.

*Hemlock, supra,* at *2.

In evaluating the take-or-pay provision, this Court must first determine whether the pay provision was a viable performance option. *Id.* Goodyear asserts that the pay provision was a valid means of performance. This Court, however, cannot agree with the arguments put forth by Goodyear. First, the Court acknowledges that payment can be a means of performance and not merely a remedy. However, the arguments raised by Goodyear are strikingly similar to those rejected in *Hemlock*. Like the seller in *Hemlock,* Goodyear contends that Daimler is a sophisticated business entity and must have viewed the pay provision as a viable alternative or it otherwise would not have agreed to that contract provision. "But the fact that a sophisticated entity has agreed to pay a sum does not necessarily mean that the law will always enforce its promise[.]" *Id.* at *3 (citing *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1289 (7th Cir. 1985)). Goodyear, again like the seller in *Hemlock*, also argues that Daimler could "avoid a breach and ensure supply would be available for future quarters" through exercising the pay provision. *Hemlock* resolved such an argument as follows:

> Second, Hemlock hypothesizes that Kyocera might have thought that in certain circumstances it would be willing to pay for polysilicon one year (but not take it) as a way to keep the contract alive in the event it still wanted polysilicon in the future. But if Kyocera wanted to keep the contract alive, it could simply purchase polysilicon and take delivery. It would not need to pay and get nothing in return. So here again, Hemlock swings and misses.

*Hemlock*, at *3.

Finally, Goodyear raises the third argument that was rejected in *Hemlock* by suggesting that Daimler could exercise the pay provision to "avoid the significant expenses, use of resources, and logistical headaches associated with stockpiling supply." Doc. 82 at 11.

> And so Hemlock theorizes that, if the price of polysilicon tanks (as it did here), it might make sense for Kyocera to pay for polysilicon without taking it in order to avoid transportation and storage costs. If the math is right, and the parties intended for the "pay" provision to account for this possibility, Hemlock may have a point. But nothing in the pleadings suggests that this math influenced the parties' negotiations. In fact, Kyocera alleges that there were no such negotiations.

*Id.* at *3. Unlike the posture in *Hemlock*, the motion to dismiss stage, Goodyear has been able to offer evidence with respect to its assertion regarding the expense of storing tires. Goodyear has noted that Daimler has admitted that it is not in the business of storing tires and at times did not have the warehouse space to do so. Goodyear though offered no evidence that these factors were considered when the take-or-pay provision was negotiated. Accordingly, the Court concludes that the pay provision at issue was not a viable performance option.

However, "[t]he fact that the pay option might not be a valid mode of performance is not the end of the inquiry. If the pay option is a lawful measure of liquidated damages, then it is nevertheless enforceable." *Id.* at *4. Under Ohio law,

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

*Samson Sales, Inc. v. Honeywell, Inc*., 12 Ohio St. 3d 27, 29 (1984).

Upon review, the Court finds that all three prongs of the above test favor Goodyear and compel a conclusion that the pay option is a lawful measure of liquidated damages. With respect to the first prong, the record makes clear that Goodyear's damages were difficult, if not nearly impossible, to determine at the inception of the contract. Goodyear put forth evidence that its

business model and profits derived therefrom are dependent on more than just the sale of its tires.[3] Goodyear retreads the tires that it sells and sells roadside assistance to accompany those tires as well. As such, the failure of Daimler to purchase the minimum number of tires required by the contract would lead not only to lost profits on the tires themselves, but to some incalculable amount of loss on services those tires and selling ancillary products related to those tires. As such, the first prong of *Honeywell*'s test is satisfied.

*Honeywell*'s third prong – that the parties intended that damages should follow the breach – is apparent from the plain language of the contract. Like the first prong, Daimler has not challenged the third prong.

The second prong of the *Honeywell* test is the only prong disputed by Daimler. Daimler claims that enforcing the pay provision would result in Goodyear receiving "an unprecedented windfall of four to five times any possible measure of compensatory damages." Doc. 80 at 13. In so arguing, Daimler attempts to use Goodyear's financial data to extract the profit per tire that Goodyear would make under the pricing terms of the contract. However, in so doing, Daimler wholly ignores *all* of the other considerations that the record reflects would constitute some form of loss to Goodyear. First, as discussed above, Goodyear lost all opportunity to service the tires that Daimler failed to purchase. Second, Goodyear lost the ability to sell roadside assistance plans to the ultimate consumers that purchased vehicles built with its tires. Given the uncertainty of the possible services that Goodyear could have sold, Daimler has failed to demonstrate that the liquidate damages are disproportionate to the actual damages Goodyear suffered.

Moreover, in examining whether the contract as a whole in unconscionable, the Court is mindful that

---

[3] The Court notes that Daimler moved to strike the declaration containing portions of this information, but at no time has Daimler disputed that Goodyear's business model includes profit derived from more than simply the sale of tires.

> Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Williams v. Walker–Thomas Furniture Co*. (C.A.D.C.1965), 350 F.2d 445, 449. A contract is unconscionable if it did not result "from real bargaining between parties who had freedom of choice and understanding and ability to negotiate in a meaningful fashion." *Kugler v. Romain* (1971), 58 N.J. 522, 544, 279 A.2d 640, 652. The crucial question is whether "each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * *?" *Williams, supra*, at 449.

*Lake Ridge Acad. v. Carney*, 66 Ohio St. 3d 376, 383 (1993). Here, there is no question from the record that two sophisticated business entities entered into negotiations and had freedom of choice before signing the contract. There can be no doubt that Daimler understood the terms of the contract and that the take-or-pay provision was not in any manner hidden or ambiguous. As a result, the Court finds that the take-or-pay provision and the contract as a whole cannot be viewed as unconscionable.

Daimler, however, contends that even this finding does not warrant summary judgment for two reasons. First, Daimler contends that it has the right to present its defense of economic duress to a jury to invalidate the take-or-pay provision. Daimler also contends that the take-or-pay provision should be invalidated because it is indefinite. The Court will evaluate both contentions.

This Court previously dismissed Daimler's counterclaim for economic duress. Daimler, however, contends that its affirmative defense remains and warrants trial. Unfortunately for Daimler, the same deficiencies in its claim remain at this stage of the litigation.

In order to state claim for economic duress, Daimler must show: 1) that it involuntarily accepted Goodyear's terms, 2) that circumstances provided Daimler no other reasonable alternative, and 3) that the circumstances were the result of Goodyear's coercive acts. *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246 (1990). "To avoid a contract on the basis of duress, a party must

prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." *Id*.

In its counterclaim, Daimler had claimed that "with the wrongful intent of developing a negotiating advantage in order to force DTNA to accept unreasonable contract terms, Goodyear stalled negotiations regarding '2015 and beyond' tire price and volume until just days before the parties' existing Supply Contract was set to expire." In this regard,

> Ohio has held that a person who alleges to have been subjected to economic duress must demonstrate "that he or she was subjected to 'a wrongful or unlawful act or threat'" and that it "'deprive[d] the victim of his unfettered will.'" *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246 (1990) (quoting 13 *Williston on Contracts* (3 Ed.1970) 704, Section 1617); *see also Local 17 Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers Pension Fund v. Mooney Welding*, 993 F.Supp. 615, 619 (N.D.Ohio 1997). "'Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion.'" *Blodgett*, 49 Ohio St.3d at 246, 551 N.E.2d 1249 (quoting 13 *Williston on Contracts* 708, § 1617 (3d ed.1970)). Furthermore, Ohio has held that "[i]t is never duress to threaten to do that which a party has a legal right to do" and that "the fact that a threat was made of a resort to legal proceedings to collect a claim which was at least valid in part constitutes neither duress nor fraud such as will avoid liability on a compromise agreement." *Gallagher v. Lederer*, 86 Ohio App. 181, 183, 90 N.E.2d 412 (Ohio Ct.App. 1st Dist. 1949) (quoting 25 Am.Jur.2d *Duress and Undue Influence* § 21).

*Charity v. GMAC Mortg. Investments*, No. 4:09-CV-02958-SL, 2010 WL 3648949, at *10 (N.D. Ohio Sept. 14, 2010).

Daimler's evidence in support of economic duress remains premised upon the same faulty argument that required dismissal of its counterclaim. In a nutshell, Daimler claims that it was unfair of Goodyear to delay the parties' negotiations. Daimler claims that Goodyear's repeated promises to provide new pricing, coupled with instructions to its employees to stall and delay any such negotiations, warrants a trial on the issue of duress. However, this Court has previously held:

> DTNA claims that under such circumstances that a claim for economic duress is viable. In support, DTNA relies upon *Comcast of Oregon II, Inc. v. City of Eugene*, 211 Or.App. 573 (2007). However, the Comcast Court noted that "[i]nducing a

> party to pay an invalid fee is an illegitimate end[.]" *Id*. at 586. Herein, DTNA has not pled any illegitimate end. Instead, DTNA alleges that Goodyear engaged in its tactics to create an advantage in negotiations. Accepting this allegation as true, the Court declines to find such a tactic to approach illegitimate. Instead, the record appears to demonstrate that Goodyear took advantage of a poor business decision by DTNA, i.e., DTNA continued to promise Goodyear tires to its customers without an ongoing contract in place with firm pricing. Goodyear's actions did not place DTNA in this predicament, and Goodyear's actions in negotiating do not support any viable claim for economic duress.

Doc. 67 at 5. The Court finds no reason to revisit this holding. For this same reason, Daimler's motion for reconsideration of the dismissal of its counterclaim is DENIED.

Moreover, Daimler's reliance on *Kehoe Component Sales, Inc. v. Best Lighting Products, Inc.*, 933 F.Supp. 2d 974 (S.D. Ohio 2013) does not alter the Court's conclusion. In *Kehoe*, the seller demanded price increases *during the term* of the parties' contract. The *Kehoe* Court concluded that there was a question of fact regarding whether such price increases were agreed to pursuant to a contractual provision or agreed to under duress. *Id.* at 1006-07. The facts in this matter place things in a dramatically different posture. Daimler does not contend that it had an existing agreement and Goodyear foisted the take-or-pay provision upon it and left it with no alternative. Instead, the facts remain nearly identical to those pled by Daimler in its now-dismissed counterclaim. Goodyear, for lack of a better term, strung Daimler along. With no price proposal and no contract in place, Daimler continued to accept orders that required Goodyear tires. As a result, with each passing day, Goodyear gained leverage in the parties' future negotiations. As that leverage was not gained in any improper manner, Daimler cannot maintain any claim or defense of economic duress.

Finally, Daimler contends that the take-or-pay provision is too indefinite to allow its enforcement. Daimler notes that the provision itself does not even speak to tires, let alone provide details on what tires would be utilized to calculate the shortfall amount. First, the Court dispatches

any assertion that it is unclear the provision applies to tires. Any argument to the contrary is frivolous. However, Daimler accurately asserts that the shortfall amount defined in the contract contains no reference to the tires or pricing that would be used to calculate the shortfall amount. "Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." Ohio Rev. Code Ann. § 1302.07.

In this final respect, the Court finds that the parties' course of dealings should serve to resolve any indefiniteness surrounding the shortfall calculation. As such, rather than Goodyear's proposed calculation[4] or Daimler's proposed calculation,[5] the Court finds that a reasonable calculation should be based upon the actual purchases made by Daimler. Accordingly, the shortfall amount for any quarter should be based upon the average price paid by Daimler for the tires actually purchased during that quarter. As neither party has presented evidence of such a calculation, they may do so through supplemental briefing within fourteen (14) days of this order.

Based upon the above, summary judgment is appropriate in favor of Goodyear on its claim for breach of contract. Similarly, Goodyear is entitled to damages for any shortfalls that occurred, after briefing of this matter, in the final quarters covered by the contract. The parties' supplemental briefing should include these calculations based upon the formula adopted by the Court.

**B. Daimler's Counterclaim for a Declaration Regarding Damages**

Based upon the Court's finding that he take-or-pay provision is enforceable, the Court finds no merit in Daimler's contentions that the U.C.C. restricts Goodyear's damages. Goodyear is entitled to judgment on this aspect of Daimler's counterclaim.

---

[4] Goodyear proposed calculating the shortfall amount based upon mix of tires in the order Daimler made to cure a prior shortfall.
[5] Daimler asserts that if any shortfall is to be calculated, it should be based upon the cheapest tire noted in the contract.

### C. Daimler's Counterclaim for Breach of the Covenant of Good Faith and Fair Dealing

Daimler contends in its counterclaim that Goodyear breached the covenant of good faith and fair dealing while the parties were operating under Amendment Number One to their agreement. Specifically, Daimler contends that Goodyear discontinued the tire line most consistently purchased by Daimler and replaced it with a much higher priced product that did not warrant such a price increase.

Goodyear has moved for summary judgment on several grounds. First, Goodyear contends that Daimler cannot establish damages related to this claim. The Court agrees.

Assuming arguendo that Goodyear's decision to discontinue a line of tires and increase the price of its replacement lines constituted a breach, Daimler cannot identify any damage flowing from *this breach* due to the parties' conduct after the introduction of the new line of tires. When Daimler objected to Goodyear's conduct and the increased prices, the parties negotiated a form of price protection. Goodyear agreed to provide Daimler a rebate for the difference in price between the new line of tires and the discontinued models that Daimler had previously been purchasing. Through negotiations, the parties agreed that Daimler would receive this price protection for 60,000 tires. This price protection covered all of Daimler's existing orders which at the time were roughly 55,500 tires.

While numerous Daimler employees have asserted that Goodyear's conduct resulted in damage, they have been unable to identify in what manner Daimler was damaged, let alone quantify such damages. However, it appears from argument that Daimler seeks to raise the same duress argument with respect to this claim. Once again, any duress was caused by Daimler's own actions or inactions. Daimler had the opportunity to negotiate price protection in its contract. It

failed to do so. Daimler could have included protections in its contracts with its buyers to pass along price increases or to offer alternatives to Goodyear tires, but it failed to do so. As such, Goodyear's offer of price protection for all of Daimler's existing contracts eliminated any damages that would flow from any arguable breach of the covenant. As a result, Daimler cannot maintain such a claim.

### D. Daimler's Motion to Strike

In part, Daimler's motion to strike is moot. The Court did not rely upon the declarations of Joseph Hildebrandt, Kevin Messick, or Michael Barker in reaching its conclusion herein. As such, the Court has no occasion to review whether their declarations should be stricken. Thus, the Court is left to examine whether to strike the declaration of Frank Payne. Payne offered information that Goodyear profited not just from the sale of tires, but from servicing those tires and offering roadside assistance packages along with the tires. In seeking to strike Payne's declaration, Daimler focuses on the failure of Goodyear to formally identify Payne in initial disclosures or responses to interrogatories. This Court, however, only relied upon Payne's declaration in the broadest sense – i.e., that Goodyear profited from beyond just the sale of its tires. Daimler cannot legitimately assert that deposing Payne would alter this factual finding. Moreover, Daimler concedes that a witness that would have provided similar information, Andrew Juvan, was identified and that Daimler did not pursue his deposition. As such, the Court declines to strike Payne's declaration and reopen discovery to allow his deposition when there is no possibility that his testimony could alter the result herein and Daimler had the opportunity to gather the same information from an identified witness. Accordingly, the motion to strike is DENIED.

## IV. Conclusion

Goodyear's motion for summary judgment is GRANTED. The parties shall file the supplemental briefs detailed herein by no later than October 12, 2018.

      IT IS SO ORDERED.

Date: September 28, 2018                            */s/ John R Adams*
                                                                             JOHN R. ADAMS
                                                                             U.S. DISTRICT JUDGE